# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| HOLLY COGGIN HAYES, | § | |
| | § | |
| v. | § | |
| | § | |
| NACOGODCHES COUNTY, TEXAS | § | |
| SHERIFF JASON BRIDGES, in his Official | § | |
| Capacity, GARY BRITTAIN, Individually, | § | |
| and in his Official Capacity, BRAD | § | |
| JIMMERSON, Individually, and in his | § | Case No. 6:15-CV-608-JDL |
| Official Capacity as an Employee of | § | |
| Nacogdoches County, Texas, | § | |
| WOOD COUNTY, TEXAS, SHERIFF JIM | § | |
| BROWN, in his Official Capacity, DEPUTY | § | |
| MANDY COLE, Individually, and in her | § | |
| Official Capacity, and SARAH | § | |
| THREADGILL, Individually, and in her | § | |
| Official Capacity. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Nacogdoches County, Texas, Sheriff Jason Bridges, in his Official Capacity, Gary Brittain, Individually, and in his Official Capacity, and Brad Jimmerson's, Individually, and in his Official Capacity as an Employee of Nacogdoches County, Texas (collectively "Nacogdoches County") Motion for Summary Judgment (Doc. No. 35), and Defendants Wood County, Texas, Sheriff Jim Brown, in his Official Capacity, Deputy Mandy Cote[1], Individually, and in her Official Capacity, and Sarah Threadgill's, Individually and in her Official Capacity (collectively "Wood County"), Motion for Summary Judgment (Doc. No. 36). Having considered the parties' arguments and the applicable law, the Court **GRANTS** both Nacogdoches County's Motion, and Wood County's Motion. The Court further **DENIES** Nacogdoches County's Motion to Sever (Doc. No. 56) as **MOOT.**

---

[1] Wood County interchangeably use the names "Mandy Cote" and "Mandy Cole." For the purpose of consistency, the Court refers to this Defendant as "Mandy Cote."

# I.   BACKGROUND

The relevant facts of this case, viewed in the light most favorable to Plaintiff as the non-moving party, are as follows.

### A. Investigation of complaint against Plaintiff Hayes, Defendant Jimmerson's Probable Cause Affidavit, and the issuance of arrest warrant.

On January 5, 2014, Burl Evans contacted the Nacogdoches Sheriff's Department to report an alleged Terroristic Threat made to him by Plaintiff Holly Coggins Hayes. Compl. at ¶ 14 (Doc. No. 1). Hayes and her ex-husband, Kevin Brittain, were arguing over the phone about custody issues regarding their child. Pl.s' Resp. to Nacogdoches Cnty. Defs.' MSJ at ¶ 9 (Doc. No. 41). Plaintiff alleges that Evans, Kevin Brittain's step-father, picked up another telephone on the line and interjected himself into the argument. *Id*. While Plaintiff acknowledges there are conflicting written and sworn accounts of the language she used in speaking to Evans, Plaintiff allegedly said one of the following: "[sic] old man, I'll kill your [sic] too," "[sic], old man, I'll kill all y'all. You wantta fight, we'll fight," or "[sic], old man, or I will kill you too." *Id*. at ¶ 10.

Nacogdoches Sheriff Deputy Brad Jimmerson responded to Burl Evans' complaint and was dispatched to Evans' home to investigate. *Id*. at ¶¶ 11, 12.  According to Nacogdoches County, Deputy Jimmerson interviewed Evans and Kevin Brittain, who recounted their arguments with Hayes and the alleged threats she made. Nacogdoches Defs.' MSJ at pg. 9 (Doc. No. 35). Evans states that some time later, he provided a written statement at the Law Enforcement Center. Pl.s' Resp. to Nacogdoches Defs.' MSJ at ¶ 31 (Doc. No. 41). In the statement, Evans expressed, "I do not trust this lady and fear for my life." Nacogdoches Defs.' MSJ, Ex. E at pg. 2 (Doc. No. 35-6). After completing his investigation Defendant Jimmerson then filled out a Probable Cause Affidavit, citing a violation of P.C. 22.07 M-A. Pl.s' Resp. to Nacogdoches Defs.' MSJ  at ¶ 13. The "M-A" indicates that the offense level was enhanced from

a "Misdemeanor Class B" to a "Misdemeanor Class A." *Id*. at ¶ 13.  In the Probable Cause

Affidavit, dated January 6, 2014, Jimmerson states:

> I have good reason to believe based on the facts that have been related to me
> about this case which lead me to believe that the suspect committed the offense,
> that HAYES, HOLLY COGGINS BRITTAIN, hereafter called Defendant, on or
> about the 5TH DAY OF JANUARY, 2014, did then and there commit the offense
> of: Terroristic Threat M/B, against the peace and dignity of The State of Texas.

Nacogdoches Defs.' MSJ, Ex. F (Doc. No. 35-7). Deputy Jimmerson states this his belief is

based on the fact that "Evans states that he had been threatened by his step sons ex wife Holly

Brittain Hayes over [the] phone because they had the right to keep his step sons child an extra

day according to court papers." *Id*. He further states in the Probable Cause Affidavit that "Evans

and Brittain stated that Holly stated '[sic] old man Ill kill all yall'. This is a violation of P.C.

22.07 M-A." *Id*. Jimmerson did not file the Probable Cause Affidavit at this time. Pl.s' Resp. to

Nacogdoches Defs.' MSJ  at ¶ 14.

On March 7, 2014, Plaintiff filed her Original Petition for Termination of Parental Rights

and Adoption of Stepchild in Wood County. *Id*. at ¶ 15. In this proceeding, Plaintiff requested

the Court to terminate the parental rights of Kevin Brittain. *Id*. Kevin Brittain answered the

Petition on March 21, 2014. *Id*. Three days later, on March 24, 2014, Jimmerson submitted the

Probable Cause Affidavit to the Justice of the Peace, Pct. 2, and requested a warrant for

Plaintiff's arrest. *Id*. at ¶ 16.

**B.  Hayes' Arrest and Strip Search at Wood County Jail**

On April 19, 2014, Hayes was arrested in Wood County on the outstanding warrant

issued by Nacogdoches County. Pl.s' Resp. to Wood Cnty. Defs.' MSJ at ¶ 1 (Doc. No. 40).

Plaintiff was transported to the Wood County Jail where she was met by Jailer Sarah Threadgill.

*Id*. Plaintiff and Threadgill recognized each other as former school mates. *Id*.  Threadgill

conducted a pat down search of Hayes and then escorted her inside for booking. *Id*. Once inside, Threadgill and another Jailer, Many Cote, escorted Plaintiff into a bathroom, and instructed Plaintiff to "squat and cough" multiple times as they conducted a visual body cavity search. *Id*. at ¶¶ 1, 2. Threadgill then took Plaintiff's bra and did not offer her the opportunity to remove the underwire so she could put it back on. *Id*. at ¶3. Plaintiff alleges that Threadgill made Plaintiff wear a shirt that was too small, but that eventually, Cote retrieved a larger shirt for her. *Id*.

### C. Summary of Claims and Defenses

In Count I, under 42 U.S.C. § 1983, Plaintiff claims that Nacogdoches County and Wood County's wrongful acts amount to a constitutional violation under the Fourth Amendment. Compl. at ¶ 41 (Doc. No. 1). Plaintiff alleges that Deputy Jimmerson and Gary Brittain violated Plaintiff's clearly established Fourth Amendment right to be free from state-occasioned seizures without probable cause. *Id*. at ¶ 43. Plaintiff alleges that Chief Investigator Gary Brittain, the biological father of Kevin Brittain, learned of Plaintiff Hayes' termination of rights proceedings against Kevin Brittain in March of 2014, and then called Jimmerson to instruct him to take the Probable Cause Affidavit to the Justice of the Peace to issue a warrant. *Id*. at ¶ 18. Plaintiff ultimately claims that "Brittain used his position and authority to falsely procure Plaintiff's arrest and incarceration by influencing his fellow local law enforcement official, Deputy Jimmerson, to procure the warrant." Pl.s' Resp. to Nacogdoches Defs.' MSJ at ¶ 27 (Doc. No. 41).

Plaintiff further asserts that Sarah Threadgill violated Plaintiff's Fourth Amendment right to be free from unreasonable searches by forcing her to "squat and cough" as Threadgill conducted a visual strip search pursuant to Wood County Jail's policies. Compl. at ¶ 37. Plaintiff alleges that Threadgill's conduct demonstrated the County's exaggerated response to remote, potential security risks in violation of the Fourth Amendment. *Id*.

Plaintiff also brings forth claims that Sheriff Jason Bridges and Nacogdoches County's lack of written policies demonstrate deliberate indifference in promulgating policies which were the moving forces behind the alleged constitutional violations, and that Bridges' failure to provide adequate training or supervision amounted to deliberate indifference in causing the violation of Plaintiff's rights. Compl. at ¶ 33. Additionally, Plaintiff Hayes asserts that Sheriff Jim Brown and Wood County's written policies to conduct visual strip searches of arrestees of violent crimes was the moving force behind Plaintiff's alleged constitutional violations of her right to be free from unreasonable searches. Compl. at ¶¶ 38-40.

In Count II, Plaintiff asserts state law claims of Malicious Prosecution against Nacogdoches County, for maliciously initiating criminal prosecution for various charges against Plaintiff, without probable cause, and which eventually were dismissed. Compl. at ¶¶ 49, 50 (Doc. No. 1).

Finally, Nacogdoches County and Wood County claim the affirmative defense of qualified immunity. Nacogdoches County first argues that Jimmerson and Brittain are entitled to qualified immunity because probable cause to arrest Hayes existed as a matter of law. Nacogdoches County and Wood County further argue that Jimmerson, Brittain, Threadgill and Cote are immune from liability because Plaintiff has not shown a violation of a clearly established constitutional right or that the Defendants' conduct was objectively unreasonable.

## II.    LEGAL STANDARD

### A.  Summary Judgment Under Rule 56

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of

the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact. Id. at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. The Court must view the evidence and draw inferences in the light most favorable to the nonmoving party. *Id*. at 255; *Tolan v. Cotton*, 134 S. Ct. 1861, 1862 (2014) (per curiam); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

### B. Qualified Immunity

Section 1983 provides a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right. Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. 800, 818. State actors sued in their individual capacity for money damages under 42 U.S.C. § 1983 are entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Once a defendant invokes qualified immunity, "the burden shifts to the

plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (internal citation omitted).

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al–Kidd,* 131 S. Ct. at 2083 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (alterations original)). The law is clearly established if the plaintiff is "able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson,* 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (internal quotation omitted); *Wilson v. Layne*, 526 U.S. 603, 617 (1999). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question *beyond debate*." *al–Kidd,* 131 S. Ct. at 2083 (emphasis added). This standard ensures the officer has "fair and clear warning" of what the Constitution requires. *Id.* at 2086–87 (internal quotation omitted). "Further, the Supreme Court has 'repeatedly told courts … not to define clearly established law at a high level of generality,' because a 'general proposition … is of little help in determining whether the violative nature of particular conduct is clearly established.'" *McCreary*, 738 F.3d at 656 (quoting *al-Kidd*, 131 S. Ct. at 2084).

If no clearly established constitutional right has been violated, the inquiry ends there. *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004). But if a constitutional violation has occurred, the court must next determine whether the conduct was objectively unreasonable. *Id.* Objective reasonableness must be evaluated as of the time of the conduct in question. *See Richards v. Wisconsin*, 520 U.S. 385, 395 (1997). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the

plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quoting *al-Kidd*, 131 S. Ct. at 2085).

## III.  DISCUSSION

### A.  False Arrest Claims Against Nacogdoches County

To state a claim under § 1983, a plaintiff must establish that she was deprived of a constitutional right, and that the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 426 U.S. 40, 49-50 (1999). Plaintiff Hayes contends that Nacogdoches County is liable for unreasonable search and seizure and false arrest under § 1983 because Defendants lacked probable cause to procure an arrest warrant against her. Defendants respond that probable cause to procure an arrest warrant against Plaintiff existed as a matter of law, and therefore, they are entitled to qualified immunity. Defendants further contend that even if a clearly established constitutional right was violated, their conduct was objectively reasonable and they would still be entitled to qualified immunity protection.

#### 1.  Deputy Brad Jimmerson

##### a.  Probable Cause Existed as a Matter of Law

A citizen has a right under the Fourth Amendment to be free from arrest unless the arrest is supported by either a properly issued arrest warrant or probable cause. *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004); *Glenn v. City of Tyler,* 242 F.3d 307, 313 (5th Cir. 2001); *Trejo v. Perez*, 693 F.2d 482, 488 n.10 (5th Cir. 1982). "Under the Fourth Amendment, an arrest is reasonable if supported by probable cause." *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 625 (5th Cir. 2006) (citing *Atwater v. City of Lago Vista*, 195 F.3d 242, 244 (5th Cir. 1999) (en banc)). In order to support her claim for an unlawful arrest, Plaintiff Hayes must show that she was arrested without probable cause. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 482

(5th Cir. 1999). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Flores*, 381 F.3d 391, 402. Under Texas law, a person commits the offense of terroristic threat if she "threatens to commit any offense involving violence to any person or property with intent to…place any person in fear of imminent serious bodily injury." TEX. PENAL CODE ANN. § 22.07(a)(2) (West 2015). "[T]he requisite intent can be inferred can be inferred from the acts, words, and conduct of the accused." *Zorn v. State*, 22 S.W.3d 3 (Tex. App.—Tyler 2002, pet. dism'd).

In the instant case, Deputy Jimmerson was dispatched to Burl Evans' house on January 5, 2014, in response to his complaint that Plaintiff had threatened him. Pl.'s Resp. to Nacogdoches Defs.' MSJ at ¶¶ 11, 12 (Doc. No. 41). Jimmerson took written statements from both Evans and Kevin Brittain. Nacogdoches Defs.' MSJ at pg. 17 (Doc. No. 35). In his statement, Evans wrote that he "fear[ed] for [his] life." *Id*. at Ex. E (Doc. No. 35-6). The following day, on January 6, 2014, Jimmerson drafted the Probable Cause Affidavit in which he states he believed Plaintiff committed the offense of Terroristic Threat, P.C. 22.07 M-A. Pl.'s Resp. to Nacogdoches Defs.' MSJ at ¶ 13 (Doc. No. 41). Jimmerson based this belief on the fact that Burl Evans had "stated that he had been threatened by his step sons ex wife Holly Brittain Hayes over the [sic] phone," and that Plaintiff stated, "I'll [sic] kill all yall."[2] Nacogdoches Defs.' MSJ, Ex. F (Doc. No. 35-7). Nacogdoches County argues that based on the totality of these facts and circumstances, "Deputy Jimmerson – and any reasonable person – had probable cause to believe Hayes committed a terroristic threat against a family member." *Id*. at pg. 17.

---

[2] The Court acknowledges that there are conflicting written and sworn accounts of the exact language Plaintiff allegedly used, but in each account, Plaintiff makes a threat to kill someone. Pl.'s Resp. to Nacogdoches Defs.' MSJ at ¶ 10 (Doc. No. 41).

The Court agrees Jimmerson had sufficient information to believe that probable cause existed that Plaintiff had committed the offense of terroristic threat based on the interviews he conducted and the written statements he obtained from Evans and Kevin Brittain. "When probable cause exists to believe that a suspect is committing an offense, the government's interests in enforcing its laws outweigh the suspect's privacy interest, and an arrest of the suspect is reasonable." *Atwater*, 195 F.3d at 244.

Plaintiff responds by reciting a number of facts which she contends are evidence that Jimmerson did not act reasonably and should not have applied for a warrant.[3] *See Malley v. Briggs*, 475 U.S. 335, 345-46 (1986) ("The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."). Plaintiff avers that Jimmerson's conduct was not reasonable because there were many discrepancies among Burl Evans' statement, the Case Submission Form, and the Probable Cause Affidavit. The majority of the discrepancies are primarily typographical: Jimmerson's Case Submission Form cover sheet indicates that Burl Evans' statement is one page, instead of two pages; the second page of Burl Evans' statement is misdated for January 4, 2014; Evans' statement indicates it was written and signed at the Law Enforcement Center, but Jimmerson testified in his deposition that it was filled out in Evans' home; the handwriting on the second page of Evans' statement differs from the handwriting on the first page; the warrant and second paragraph of the Probable Cause

---

[3] In her response, Plaintiff groups together Defendant's summary judgment arguments, and generally addresses the issue of probable cause in its third heading under the "Arguments and Authorities" section ("ISSUES 2. & 3; Defendant's reliance on the warrant's "facial validity" is misplaced; probable cause must be based on objective reasonableness.") Pl.'s Resp. to Nacogdoches Defs.' MSJ (Doc. No. 41 at 11). Plaintiff puts forth a number of facts questioning Defendant Jimmerson's "reasonable professional judgment," without clearly and separately addressing the issues of probable cause as a matter of law, intermediary determination, and qualified immunity. In light of Plaintiff's briefings and responses to Defendant's arguments, and out of an abundance of caution, the Court liberally construes Plaintiff's factual allegations throughout its brief as arguments relating to probable cause and qualified immunity.

Affidavit list the violation as a Class A Misdemeanor, while the first paragraph lists the crime as a Class B Misdemeanor; and, the Probable Cause Affidavit was never signed by the Justice of the Peace. *See* Pl.'s Resp. to Nacogdoches Defs.' MSJ at ¶ 31 (Doc. No. 41); Pl's Ex. Nos. 3, 10 (Doc. Nos. 41-3, 41-10).

It is clear that there are many typographical inconsistencies across Burl Evans' statement, the Case Submission Form, and the Probable Cause Affidavit. But beyond Plaintiff's allegation that these inconsistencies are evidence of Jimmerson's plan or motive to manufacture probable cause for her unlawful arrest, Plaintiff neither argues nor cites to any law that would suggest these errors should negate a finding of probable cause. Moreover, even if the Court did conclude that probable cause to arrest Hayes did not exist because of these inconsistencies, summary judgment on Plaintiff's false arrest claim would still be appropriate under the qualified immunity principle. Courts have recognized "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Maryland v. Garrison*, 480 U.S. 79, 87 (1987). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Haggerty v. Texas State University*, 391 F.3d 653, 656 (5th Cir. 2004). The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. 335, 343. Absent a showing that a reasonably well-trained officer would have known that the affidavit failed to establish probable cause on the basis of these errors, Jimmerson's typographical mistakes and errors are afforded qualified immunity protection.

Hayes further alleges that Jimmerson knew the parties involved, and had called Hayes in the past about child custody issues, implying a conflict of interest existed in Jimmerson

procuring an arrest warrant against Hayes. *See* Pl.'s Resp. to Nacogdoches Defs.' MSJ at ¶¶ 31, 36 (Doc. No. 41). Plaintiff cites no authority that would allow this Court to find that an officer's prior knowledge of the parties or contact therewith taints or otherwise invalidates a reasonable belief of probable cause. But even if the Court found on this basis that Jimmerson mistakenly concluded probable cause existed, he would still be entitled to qualified immunity absent a showing that he acted in an objectively unreasonable manner.

Plaintiff also claims that the Probable Cause Affidavit fails to allege a required element of terroristic threat, that "the victim feared imminent bodily injury." *Id.* at ¶ 31. Again, Plaintiff does not cite to any authorities which would instruct the Court to negate a finding of probable cause on this basis. To the contrary, Texas law requires only an offense to be named in a warrant, not for any elements of the offense to be specifically alleged. TEX. CODE. CRIM. PROC. ANN. Art. 15.02 (West 2015) ("It must state that the person is accused of some offense against the law of the State, naming the offense."). Moreover, the offense of terroristic threat "does not require the victim or anyone else to be actually placed in fear of imminent serious bodily injury." *Zorn v. State*, 222 S.W.3d at 3. The language of the statute only requires that a person threaten to commit any offense involving violence with the intent to "place any person in fear of imminent serious bodily injury." TEX. PENAL CODE ANN. § 22.07(a)(2) (West 2015).

Finally, according to Plaintiff, Jimmerson acted unreasonably in procuring the arrest warrant because he "had no intention of ever pursuing the warrant until he was contacted by Gary Brittain." Pl.'s Resp. to Nacogdoches Defs.' MSJ at ¶ 36 (Doc. No. 41). The Probable Cause Affidavit was submitted to the Justice of Peace on March 24, 2014, 77 days after the incident was reported, and three days after Kevin Brittain had filed an answer to Hayes' petition to terminate Brittain's parental rights. *Id.* at ¶¶ 15, 16. In his deposition, Jimmerson testifies that

he submitted the affidavit after Evans called to check on the status of the case sometime in March of 2014. *See* Pl.'s Resp. to Defs.' MSJ, Ex. 12 (Oral Dep. Brad Jimmerson at 20:22-20:25, 21:1-21:18) (Doc. No. 41-12). Plaintiff claims that Evans made statements to the contrary, and that he had called Jimmerson within a few weeks of the incident. Pl.'s Resp. to Nacogdoches Defs.' MSJ at ¶ 32 (Doc. No. 41). However, the deposition testimony cited by Plaintiff pertains to a different issue:

> Q: About how long was it from your recollection from the time you called to find out what was going on with your complaint to the time that you were informed Holly was arrested?
> A: Weeks. I'm not sure how long, but it wasn't – it was quite a while.
> Q: I mean, was it months?
> A: I'll say weeks. I would say probably less than a month.

Pl.'s Resp. to Nacogdoches Defs.' MSJ, Ex. 11 (Oral Dep. Burl Evans at 39:12-39:25, 40:1) (Doc. No. 41-11). Here, Evans is stating that he learned Plaintiff was arrested less than a month after he called Jimmerson, not that he had called to follow up on the case less than a month after he reported it. While it is true that Jimmerson filed the Probable Cause Affidavit three days after Kevin Brittain responds to Plaintiff's parental termination petition, Plaintiff makes no argument that the delay was improper or that the probable cause had become stale.

But even if Jimmerson submitted the Probable Cause Affidavit because of the parental termination suit, or because he was instructed to do so by Defendant Brittain, both of which Nacogdoches County deny, "[t]he evil intent or bad faith of an officer in obtaining or executing a valid warrant cannot transmute an arrest made with probable cause into a section 1983 violation, just as an officer's good intent is irrelevant when he contravenes settled law." *Jureczki v. City of Seabrook, Tex.*, 760 F.2d 666, 669 (1985). In other words, probable cause analysis does not instruct the Court to look at the intent behind, or subjective reasonableness of, an officer's conduct.

In sum, Defendant Jimmerson had sufficient information when drafting the probable cause affidavit for a reasonable person to conclude that Plaintiff had committed the alleged offense. The Court finds that probable cause to procure an arrest warrant against Plaintiff existed as a matter of law, and that Plaintiff's Fourth Amendment right was not violated. But even if the Court did conclude that probable cause did not exist as a matter of law, Defendant Jimmerson would be entitled to qualified immunity as Hayes has failed to show that Defendant Jimmerson acted in an objectively unreasonable manner.

### b. An Independent Intermediary Determined Probable Cause Existed

Nacogdoches County argues that even if Jimmerson did not have probable cause to procure an arrest warrant against Plaintiff, he is entitled to qualified immunity based on an independent intermediary determination of probable cause. "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate…the intermediary's decision breaks the chain of causation" and insulates the officers. *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc); *see also Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988); *Murray v. Earle*, 405 F.3d 278, 291 (5th Cir. 2005). An officer-defendant may still be liable, however, if: (1) "[a] warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable," *Malley v. Briggs*, 475 U.S. at 344-45, or (2) if the officer "knowingly and intentionally, or with reckless disregard for the truth" makes a false statement or material omission, which results in a warrant being issued without probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Because the Court has already determined that probable cause to procure an arrest warrant against Hayes existed as a matter of law,

Jimmerson cannot be liable. However, out of an abundance of caution, the Court will examine whether Jimmerson may still be liable under *Franks*.

An officer may not be entitled to qualified immunity under the independent intermediary doctrine and would still be liable for false arrest under *Franks* if he knowingly and intentionally, or with reckless disregard for the truth, made a false statement or material omission in procuring the arrest warrant. *See, e.g., Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006) (discussing *Franks*). To determine materiality, courts insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause. *Kohler*, 470 F.3d at 113. Furthermore, to meet her burden under *Franks* liability, Plaintiff must make a "strong preliminary showing" on summary judgment that Jimmerson made an omission "with the intent to mislead the magistrate." *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995). The chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010). "[M]ere allegations of taint, without more, are insufficient to overcome summary judgment." *Id.* (internal quotations omitted). *See also, Taylor*, 36 F.3d at 457 (finding no summary judgment evidence to support assertions that an intermediary relied on an officer's false report). Negligent omissions will not undermine an affidavit. *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).

It is unclear from Plaintiff's briefings what facts she believes were improperly omitted from the Probable Cause Affidavit.[4] Plaintiff generally alleges that at the time Jimmerson prepared the affidavit and report, he knew that Kevin Brittain had a criminal history, that

---

[4] The Court notes that neither party explicitly identifies or argues *Franks* liability. Plaintiff makes a conclusory allegation that the "existence of so many lies, omissions, and glaring conflicts of interest clearly indicate much more than ineptitude." Pl.'s Resp. to Nacogdoches Defs.' MSJ at ¶ 36 (Doc. No. 41). Again, out of an abundance of caution, the Court liberally construes Plaintiff's factual allegations to address Plaintiff's arguments of malicious omissions.

Plaintiff and Kevin Brittain had a history of child custody issues, and that it was Kevin Brittain who first called to report the alleged crime, not Burl Evans. *See* Pl.'s Resp. to Defs.' MSJ at ¶ 36 (Doc. No. 41).

As a cursory matter, Plaintiff does not specifically allege that any material facts were intentionally omitted from the Probable Cause Affidavit. But under the *Kohler* analysis, if Jimmerson had included information about his knowledge of Plaintiff Hayes' and Kevin Brittain's hostile relationship in the affidavit, it would have likely bolstered a finding of probable cause that a threat of violence was made by a party engaged in a child custody dispute. The issue of whether Kevin Brittain or Burl Evans called first to report the crime is immaterial, as the insertion of this fact in the affidavit would not affect a finding of probable cause. Neither would including knowledge of Kevin Brittain's criminal history make it more or less likely that Plaintiff Hayes committed the offense of making a terroristic threat. Plaintiff does not demonstrate that any of the facts omitted from the Probable Cause Affidavit would have changed a finding of probable cause.

More importantly, Plaintiff does not meet her burden of making a strong preliminary showing that Jimmerson made any omissions with the intent to mislead the magistrate judge under *Franks*. Plaintiff, on multiple occasions, accuses Nacogdoches County of being deceptive, and of lying and omitting information while procuring the arrest warrant. "It is patently clear that the Defendants cannot keep their deceptions in line." Pl.'s Resp. to Nacogdoches Defs.' MSJ ¶ 32 (Doc. No. 41). "Jimmerson either alone or in concert with others falsified witness statements." *Id*. at ¶ 43. Plaintiff accuses Jimmerson of lying to falsely procuring an arrest warrant, without citing to any facts in the record or law that would support her allegations.[5]

---

[5] "A district court's decision on summary judgment is largely controlled by what the parties presented. If somewhere in a record there is evidence that might show a dispute of material fact, the district court needs to be pointed to that

Overall, Plaintiffs fail to state an actionable claim for false arrest against Jimmerson under § 1983. Viewing the evidence and factual inferences from the evidence in the light most favorable to the party opposing summary judgment, the Court finds that probable cause to procure an arrest warrant against Hayes existed as a matter of law. Though there were inconsistencies and mistakes in procuring the Probable Cause Affidavit, none of them rise to the level of objective unreasonableness needed to negate a finding of probable cause, and Jimmerson is entitled to qualified immunity. Additionally, even Jimmerson did not have probable cause to submit the affidavit, the chain of causation was broken as to individual liability once an independent intermediary reviewed and issued the arrest warrant. Without more than allegations of a conspiracy to falsely arrest her, Plaintiff's allegations are insufficient to survive summary judgment against Jimmerson.

Because Plaintiff fails to show an underlying Fourth Amendment violation and because Jimmerson is entitled to qualified immunity, the Court accordingly **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's Fourth Amendment claim against Defendant Jimmerson.

### 2. Investigator Gary Brittain

Plaintiff argues that Investigator Gary Brittain used his position of authority to falsely procure the arrest warrant against her in violation of her Fourth and Fourteenth Amendment rights.[6] Nacogdoches County respond that Brittain is entitled to qualified to immunity under *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005), in which the Fifth Circuit reversed the

---

evidence as opposed to having to engage in an extensive search." *Jones v. Sheehan, Young & Culp*, 82 F.3d 1334, 1338 (5th Cir. 1996).

[6] Plaintiff states "Chief Investigator Brittain learned of the [child custody] suit, and called upon Deputy Jimmerson to take the January probable cause affidavit to the Justice of the Peace to have a warrant issued for alleged Terroristic Threat." *See* Compl. at ¶ 18 (Doc. No. 1). Plaintiff also generally alleges that Defendant Brittain's actions were not for any proper law enforcement purpose, but were inspired by malice which amounted to an abuse of official power. *Id.* at ¶ 44.

district court's denial of qualified immunity as to two officers who were involved in procuring a warrant but who neither signed nor prepared the affidavit.

In *Michalik*, the plaintiffs "brought claims under *Malley v. Briggs*, which concerns warrant applications that, on their face, [failed] to establish probable cause." *Id*. at 258. As the Court has already determined that the Probable Cause Affidavit and warrant application established probable cause as a matter of law, *Michalik* is not applicable here. However, the Fifth Circuit held in a recent case that an officer who neither signed nor prepared an affidavit may still be liable if the plaintiff brings a *Franks* claim against the participating officer, alleging that the officer deliberately or recklessly provided false or misleading information to assist in the procurement of a warrant. *Melton v. Phillips*, No. 15-10604, 2016 WL 4895989, *1, *4 (5th Cir. Sept. 14, 2016). ("[A]n officer who deliberately or recklessly provides false or misleading information for use in an affidavit in support of a warrant is certainly in a position to fully assess his own conduct."). *See Michalik,* 422 F.3d at 258 (where the Fifth Circuit held that plaintiffs did not have a claim under *Franks* because they had not alleged any false statement in the warrant application). Though Brittain is precluded from the possibility of liability under *Michalik*, the Court considers whether Brittain deliberately or recklessly provided false or misleading information for use in the affidavit, and if he may still be liable under *Melton*.

According to Plaintiff, Brittain told deputies that Hayes was "dangerous" and that a warrant needed to be issued for her arrest.[7] Pl.'s Resp. to Nacogdoches Defs.' MSJ ¶ 27, fn. 36 (Doc. No. 41). The only other evidence Plaintiff presents suggesting involvement by Gary Brittain comes from an affidavit by Carlo D'Angelo, Plaintiff's attorney in her criminal case. In this affidavit, Mr. D'Angelo claims that Billy Murphy, a felony investigator in the Nacogdoches County Office, told Mr. D'Angelo that he "contacted Gary Brittain… to review the case and was

---

[7] Plaintiff does not cite to the record for this testimony.

advised by him that the case was 'good' and that he should proceed forward with the charges." Pl.s' Resp. to Nacogdoches Defs.' MSJ, Ex. 9 at 2 (Doc. No. 41-9). The affidavit further states that "Gary Brittain [sic] reviewed this case and authorized Mrs. Coggins-Hayes' arrest…" *Id.* Defendants contend that Mr. D'Angelo's affidavit is based on hearsay and speculation based off of the following testimony:

> Q: "Gary Brittain reviewed this case." Your basis for saying that is because of what Bill Murphy told you.
> A: Yes, sir.
> Q: You don't know if Gary Brittain reviewed the case or not.
> A: No, sir.
> Q: Gary Brittain authorized Mrs. Coggins-Hayes' arrest. And you don't know anything about whether or not Gary Brittain did that other than what Bill Murphy told you.
> A: Yes, sir.

Nacogdoches Defs.' Surreply to Pl.'s Resp., Ex. J (Oral Dep. Carlo D'Angelo 57:21-57:25; 58:1-58:18) (Doc. No. 55-1). The testimony indicates that Mr. D'Angelo's affidavit is not based on personal knowledge. The Court finds that Mr. D'Angelo's affidavit contains multiple levels of hearsay, is speculative, and lacks the proper foundation to establish personal knowledge of the statements made therein. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated asserts, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Plaintiff fails to provide the Court with any reliable evidence that Gary Brittain instructed or contacted anyone regarding Plaintiff's arrest warrant, much less proffer any summary judgment evidence that Brittain provided false or misleading information for use in the Probable Cause Affidavit. *See Melton*, at *4; *United States v. Tomblin*, 46 F.3d 1369, 1377. Without any evidence to support its allegation that "Brittain used his position and authority to falsely procure

Plaintiff's arrest warrant," Plaintiff's claim against Brittain is unavailing. Nor does Plaintiff offer any evidence or argument that Brittain acted in an objectively unreasonable manner. Accordingly, the Court finds that Brittain is entitled to qualified immunity and **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's Fourth Amendment claim against Investigator Gary Brittain.

### 3. Sheriff Jason Bridges

Plaintiff Hayes next brings forth a claim against Sheriff Jason Bridges for implementing a policy, practice, or custom of covering up officer misconduct, and for acting with deliberate indifference in supervising his subordinates. Pl.'s Resp. to Nacogdoches Defs.' MSJ at pg. 16 (Doc. No. 41). Nacogdoches County argues as a preliminary matter that Plaintiff's claims against Bridges fail as a matter of law because Plaintiff's Fourth Amendment rights were not violated. Nacogdoches Defs.' Reply. to Pl.'s Resp. at pgs. 6-7 (Doc. No. 42). Defendants further aver that even if Plaintiff's constitutional rights had been violated, the Nacogdoches Sheriff's office did not fail to implement appropriate policies that prohibit improper use of official authority to influence judicial proceedings. *Id*. Finally, Nacogdoches County argues that Plaintiff has failed to proffer sufficient summary judgment evidence that Bridges acted with deliberate indifference to Plaintiff's rights by allegedly failing to provide adequate training, or that any alleged failure to adequately train actually caused or was the moving force behind any violation of Plaintiff's rights. *Id*.

"Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Monell v. Dept. of Soc. Serv.'s of City of New York*, 436 U.S. 658, 690

n.55 (1978) (internal quotations omitted). "Thus, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal quotations omitted).

Hayes brings her suit against Sheriff Jason Bridges only in his official capacity, and not individually. *See generally* Compl. (Doc. No. 1). Because official capacity suits are really suits against the governmental entity, Hayes' attempt to hold Bridges liable for failing to train and supervise Jimmerson is subsumed within her identical claim against Nacogdoches County. Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Hayes' § 1983 claims against Sheriff Bridges.

### 4. Nacogdoches County

Plaintiff Hayes next asserts that Nacogdoches County is liable as a municipality for failing to promulgate a reasonable policy on familial conflicts of interest within law enforcement and investigation agencies. *See* Pl.'s Resp. to Nacogdoches Defs.' MSJ at ¶ 37 (Doc. No. 41). Nacogdoches County rebuts that the County is entitled to summary judgment on Plaintiff's claims because Plaintiff failed to establish an underlying constitutional violation, and because she failed to produce evidence to satisfy the requirements for municipal liability under *Monell v. Dept. of Soc. Serv.'s of City of New York*, 436 U.S. 658 (1978).

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). The municipality must be "the moving force behind the injury alleged." *Hinojosa v. Butler*, 547 F.3d 285, 296 (5th Cir. 2008) (quoting *Bd. of the Cnty. Comm'rs of Bryan Cnty. v.*

*Brown*, 520 U.S. 397, 404 (1997)). A municipality may be liable under § 1983 for "acts directly attributable to it 'through some official action or imprimatur.'" *See Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Piotrowski*, at 578). Liability will not attach through theories of respondeat superior or vicarious liability. *Whitt v. Stephens County*, 529 F.3d 278, 283 (5th Cir. 2008).

As discussed above, Plaintiff has failed to prove a violation of a constitutional right, a necessary element for establishing municipal liability under § 1983. However, out of an abundance of caution, the Court also addresses why Plaintiff does not raise a genuine dispute of material fact as to the second element. To prove the existence of an official policy, a plaintiff "must identify a municipal policy or custom that caused the plaintiff's injury." *Hinojosa*, 547 F.3d at 296 (citing *Monell*, 436 U.S. 658, 694 (1978)). This policy or custom can be (1) an express policy "officially adopted and promulgated by the municipality's law-making officers or by an official to whom the lawmakers have delegated policy-making authority"; (2) a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy"; or (3) "a final decisionmaker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380–81 (5th Cir. 2010) (quoting *Brown v. Bryan County*, 219 F.3d 450, 456 (5th Cir. 2000)).

As is alleged in this case, a plaintiff may establish that a municipal policy or custom caused her injury by showing that the municipality failed to adequately train or supervise its officers. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To demonstrate failure to supervise or train, the plaintiff must establish: "(1) the municipality's training policy procedures were

inadequate, (2) the municipality was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the constitutional violation." *Kitchen v. Dallas County*, 759 F.3d 468, 484 (5th Cir. 2014) (quoting *Sanders-Burns*, 594 F.3d at 366).

As to the first factor, an inadequate policy, the plaintiff must prove the training program was deficient in an identified respect; "it is not enough for a plaintiff to show that the municipality's training program is, in a general sense, wanting." *Hinojosa*, 547 F.3d at 297.

The second factor of deliberate indifference for municipal liability is similar to the standard for establishing deliberate indifference for supervisor liability. The plaintiff must show "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy is so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Sanders-Burns*, 594 F.3d at 381 (quoting *City of Canton*, 489 U.S. at 390). Likewise, a plaintiff typically establishes inadequate training for a municipality through a pattern of conduct. *Id.* A plaintiff demonstrates a pattern by proving the "municipality had notice of a pattern of similar violations which were fairly similar to what ultimately transpired when the plaintiff's own constitutional rights were violated." *Kitchen*, 759 F.3d at 484 (internal quotations omitted). A plaintiff may also establish inadequacy by single-incident liability in "a narrow range of circumstances" where the plaintiff can prove "the highly predictable consequence of failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Sanders-Burns*, 594 F.3d at 381 (internal quotations omitted).

As to the third factor, causation, "the plaintiff must prove an affirmative answer to the question 'Would the injury have been avoided had the employee been trained under a program

that was not deficient in the identified respect?'" *Hinojosa*, 547 F.3d at 297 (quoting *City of Canton*, 489 U.S. at 391). A plaintiff faces a heavy burden in establishing municipal liability for failure to train. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("A municipality's culpability for deprivation of rights is at most tenuous where a claim turns on failure to train.").

First, Plaintiff fails to meet the first element of proving that the municipality's training policy procedures were inadequate. Plaintiff argues that the no official policy exists regarding conflicts of interest with family members within the Nacogdoches County Attorney's Office or the Sheriff's Office. Pl.'s Resp. to Nacogdoches Defs.' MSJ at ¶ 41 (Doc. No. 41). Plaintiff Hayes provides deposition testimony from Jimmerson, Brittain, Bridges, and Chief Deputy Rusty Allen, affirming the lack of such an official policy. However, each of these witnesses also testifies that while there is no express or official policy addressing conflicts by family members, there is an unofficial custom or practice in which employees do not handle matters dealing with their own family members. Pl.'s Resp. to Nacogdoches Defs.' MSJ.[8] It is clear that while Nacogdoches County has no official or written policy on avoiding matters involving family members, there is a "persistent, widespread practice of city officials or employees... which... is so common and well settled as to constitute a custom that fairly represents municipal policy" that employees will delegate matters involving their own family or close friends. *Sanders-Burns*, 594 F.3d 380–81.

---

[8] Ex. 12, Oral Dep. of Deputy Brad Jimmerson 40:9-40:14 ("Q: For instance, if you got a call about your son, I mean, the call came in, it was in your zone and it involved your son, what would you do? A: If I didn't think that it was something I needed to handle, I'd probably call somebody else to take care of it for me.");
Ex. 13, Oral Dep. of Bill Murphy 21:16 – 21:22 ("Q: As far as you're aware, is there any written policy here in the Sheriff's Department or for Nacogdoches County concerning deputies or law enforcement dealing with family members on call? A: I can't say that there's any written, I think it's just an unwritten rule you don't do it, and I think every officer knows that.");
Ex. 15, Oral Dep. of Sheriff Jason Bridges 34:24 – 34:25, 35:1 – 35:4 ("All of our deputies have a basic understanding to know that we don't deal with any other family conflicts of interest of immediate family member, even if they're a close friend that we will call another unit to the location and let them handle the call.").

Second, Plaintiff again fails to meet the element of deliberate indifference. Plaintiff proffers no summary judgment evidence that the need for more or different training is obvious, and that the inadequacy is so likely to result in constitutional violations that the policymakers can reasonably be said to have been deliberately indifferent to the need. Nor does Plaintiff offer a single other occasion where this type of violation has been alleged to have occurred.

Third, Plaintiff provides no evidence that her alleged Fourth Amendment violation could have been avoided had Deputy Jimmerson been trained under a program not deficient in the identified respect. Put another way, Plaintiff fails to show how an official or written policy would have resulted in an outcome different than under the current unofficial custom.

In sum, the Court disagrees with Plaintiff Hayes' proposition that a lack of official or written policy as to matters involving family would subject Nacogdoches County to municipal liability. Plaintiff's limited citation to the record and case law are insufficient for overcoming the heavy burden of establishing an inadequate policy to train or supervise employees, and conduct amounting to deliberate indifference in doing so. Therefore, Plaintiff has failed to present a genuine issue of material fact to survive summary judgment, and the Court **GRANTS** Defendant Nacogdoches' Motion for Summary Judgment on its Fourth Amendment claim against Nacogdoches County.

**B. Malicious Prosecution Claims Against Nacogdoches County**

In addition to its false arrest claims, Plaintiff brings a state law claim against all Nacogdoches County for malicious prosecution. Nacogdoches County argues that the Texas Tort Claims Act bars Plaintiff's malicious prosecution claim against any individual defendants, and that the County's sovereign immunity is not waived, thereby precluding a claim against the County. The Court agrees with Nacogdoches County.

The Texas Tort Claims Act ("TTCA") Election of Remedies provision states that "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall be immediately dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). Plaintiff's asserts its malicious prosecution complaint against "the Nacogdoches County Defendants, including Brittain and Jimmerson." Pl.'s Compl. ¶ 49 (Doc. No. 1). Accordingly, the Court **GRANTS** Nacogdoches County's Motion for Summary Judgment on malicious prosecution claims as to any individual defendants. *See*, *e.g., Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (affirming dismissal of intentional tort claims against individual officers pursuant to § 101.106(e) where the same claims were brought against the city).

As to the claim against the County, "[t]he TTCA expressly does not apply to claims 'arising out of assault, battery, false imprisonment, or any other *intentional tort.*' *Craig v. Dallas Area Rapid Transit Auth.*, 504 F. App'x 328, 334 (5th Cir. 2012) (citing TEX. CIV. PRAC. & REM. CODE § 101.057(2)). Malicious prosecution is an intentional tort under Texas law. *Id*. Therefore, Plaintiff Hayes' claim of malicious prosecution against Nacogdoches County does not fall under the purview of the TTCA, and is thus precluded by Nacogdoches County's sovereign immunity as a governmental entity. *Id*. Accordingly the Court **GRANTS** Nacogdoches County's Motion for Summary Judgment on malicious prosecution claims against the County. *See Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir. 1994) (affirming dismissal for state law claims under TTCA because the Act did not cover claims for false imprisonment or other intentional torts, and all of arrestees' alleged damages arose out of their claims for false arrest and malicious prosecution).

To the extent that Plaintiff Hayes intended to pursue a malicious prosecution claim under § 1983, the Court finds that Plaintiff is also precluded from pursuing such a claim. A claimant

"must allege that officials violated specific constitutional right in connection with a § 1983 malicious prosecution claim." *Cuadra v. Houston Independent School Dist.*, 626 F.3d 808, 812-13 (5th Cir. 2010). (internal quotations omitted). Where a plaintiff has not raised a genuine issue of material fact as to any other possible violation of her Fourth Amendment rights, an attempt to assert a free-standing § 1983 malicious prosecution claim fails as a matter of law. *Id.*

## C. Unreasonable Search Claims Against Wood County

### 1. Plaintiff's Objections to Defendants' Exhibit "A", Affidavit of David McGee

As a preliminary matter, Plaintiff argues that specific statements in David McGee's affidavit are inadmissible as summary judgment evidence on the basis of hearsay, lack of personal knowledge, or improper witness testimony. Plaintiff first objects to McGee's statements that "The Texas Commission on Jail Standards has reviewed and approved this search policy," and that "Upon Jail Standards' recommendation, the Wood County Jail continued to use the Search Form and Severity of Offense Scale." Wood Cnty. Defs.' MSJ, Ex. A at pg. 3 (Doc. No. 36-1). Defendants respond that David McGee is the Wood County Jail Administrator and these statements are based upon his experience in law enforcement in Texas County Jails and the Texas Department of Public Safety for over 11 years. Wood Cnty. Defs.' Reply to Pl.'s Resp. at pg. 3 (Doc. No. 47). Defendants further claim that McGee is charged with the day-to-day operations of the Wood County Jail, supervision of Jail staff, implementation of the Jail's policies and all interactions with Texas Jail Standards. *Id.* The Court overrules Plaintiff's objections on the basis that the statements in question are relevant nonhearsay statements. *See* Fed. R. Evid. 801. The Court also overrules the objection on the basis that Defendant has established that McGee possesses personal knowledge to testify on these matters.

Plaintiff next objects to McGee's statement that "Terroristic Threat is an assaultive or violent crime because according to the Texas Penal Code Section 22.07, a person commits the offense of Terroristic Threat if she threatens to commit any offense involving violence to any person" on the basis that McGee is not an expert and may not offer testimony on conclusions or interpretations of the law. *See* Wood Cnty. Defs.' MSJ, Ex. A at pg. 4 (Doc. No. 36-1). Defendant argues that Mr. McGee's statement is offered for the purpose of explaining why the offense of Terroristic Threat is identified as an assaultive charge on the Jail's Severity of Offense Scale. *See* Wood Cnty. Defs.' Reply to Pl.'s Resp. at pg. 4 (Doc. No. 47). The Court agrees that McGee is not offering an interpretation or expert opinion on the Texas Penal Code; rather, he is providing an explanation for the driving force behind Wood County Jail's search policies, which is within the scope of his personal and professional knowledge, and relevant to Plaintiff's claim that Wood County's strip search policy is unconstitutional. Plaintiff's objection is overruled.

Plaintiff next makes various objections to the observations McGee makes based upon his review of relevant jail videos. To the extent McGee speculates as to the off-camera actions of the jail trustees, the Court sustains Plaintiff's objections.

Finally, Plaintiff objects to McGee's testimony about the reasons why Wood County Jail's search policies were implemented as an improper opinion based on a lack of personal knowledge. *See* Defs.' MSJ, Ex. A at pg. 5-6 (Doc. No. 36-1). Defendant responds that David McGee is the Jail Administrator appointed by Sheriff Brown to run the Wood County Jail, supervise the staff, draft and review Jail Operational Plans with Jail Standards representatives, and implement the Jail's policies, and that Mr. McGee possesses the personal knowledge to provide an explanation behind the Jail's policies, even if he is not the individual who put the policies in place. Wood Cnty. Defs.' Reply to Pl.'s Resp. at pg. 5 (Doc. No. 47). The Court finds

that Mr. McGee possesses the requisite professional and personal knowledge to speak on matters concerning the Jail's search policies, and overrules Plaintiff's objections.

### 2. Sarah Threadgill & Deputy Mandy Cote

In her Complaint, Plaintiff asserts that Defendant Sarah Threadgill is liable individually, and in her official capacity, for violating Plaintiff's Fourth Amendment right to be free from unreasonable visual strip searches. Wood County argues that Threadgill is entitled to qualified immunity as Plaintiff failed to a constitutional violation, and that Threadgill's conduct was objectively unreasonable. Plaintiff responds to Wood County's summary judgment arguments claiming that no reasonable suspicion existed to conduct a strip search of Plaintiff Hayes, and that Threadgill did not conduct the search in good faith.[9] Plaintiff has non-suited her claims against Deputy Mandy Cote, and the Court does not address any of Plaintiff's previous complaints against Defendant Cote. The Court first addresses whether Threadgill is entitled to qualified immunity.

   **a. Plaintiff has shown that she has a clearly established right to be free from strip searches absent an individualized reasonable suspicion she was concealing weapons or contraband.**

Claims of qualified immunity are analyzed under a two-step process. *Kelly v. Fotti*, 77 F.3d 819, 821 (5th Cir. 1996). The Court first considers whether plaintiff has alleged the violation of a clearly established constitutional right under currently applicable constitutional standards. *Id*. If the official's conduct was unconstitutional, the Court next determines whether it was nonetheless objectively reasonable. *Id*.

---

[9] The Court again notes that Plaintiff does not respond directly to Defendants' summary judgment arguments. Defendants argue liability in the context of qualified immunity. Plaintiff "recasts" the issues as whether reasonable suspicion existed to conduct the strip search, and if the search was conducted in good faith. *See* Pl.'s Resp. to Wood Cnty. Defs.' MSJ at ¶ 18 (Doc. No. 40). The Court liberally construes Plaintiff's arguments to address Defendants' framework.

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al–Kidd,* 131 S. Ct. at 2083 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (alterations original)). The law is clearly established if the plaintiff is "able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson,* 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (internal quotation omitted); *Wilson v. Layne*, 526 U.S. 603, 617 (1999). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question *beyond debate*." *al–Kidd,* 131 S. Ct. at 2083 (emphasis added).

The Supreme Court has long recognized that "[t]he difficulties in operating a detention center must not be underestimated by the courts." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S.Ct. 1510, 1515 (2012) (citing *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)). "The Court has confirmed the importance of deference to correctional officials and explained that a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests'." *Id.*, 132 S.Ct at 1515. In its seminal case on Fourth Amendment challenges to strip search detention policies, the Supreme Court articulated a framework for analyzing such policies as follows:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case, it requires a balancing of the need for the particular search against invasion of personal rights that the search entails. The Court must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish*, 441 U.S. 520, 599 (1979).

In the decades following *Wolfish*, the law has become well-settled in the Fifth Circuit regarding the reasonableness of strip search policies. "Jail officials may strip search a person arrested for a minor offense and detained pending the posting of bond only if they possess a reasonable suspicion that he is hiding weapons or contraband." *Kelly*, 77 F.3d at 821; *see also Watt v. City of Richardson Police Dept.*, 849 F.2d 195, 197 (5th Cir. 1988); *Williams v. Kaufman Cnty.*, 86 F. Supp. 2d 586, 594 (N.D. Tex. 2000) (where speculation regarding the presence of contraband on the plaintiff did not create a reasonable, individualized suspicion that would justify a strip search); *Stewart v. Lubbock Cnty., Tex.*, 767 F.2d 153, 156-57 (5th Cir. 1985) ("Because Lubbock County's strip search policy was applied to minor offenders awaiting bond when no reasonable suspicion existed that they as a category of offenders or individually might possess weapons or contraband, under the balancing test of *Wolfish* we find such searches unreasonable and the policy to be in violation of the Fourth Amendment."). A reasonable suspicion may arise from factors such as "the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *Kelly*, 77 F.3d at 821 (quoting *Giles v. Ackerman*, 746 F.2d 614, 617 (9th Cir. 1984)).

At the same time, the Fifth Circuit has also recognized that prisoners possess a constitutional right to bodily privacy, but that this right is "minimal at best." *Tufts v. Texas*, 410 Fed.Appx. 770, 2011 WL 72198 (5th Cir., Jan. 7, 2011), citing *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002). Prison officials have the burden of showing that a search was reasonable, however, the Fifth Circuit has described this burden as "light." *Waddleton v. Jackson*, 445 Fed.Appx. 808, 2011 WL 5025348 (5th Cir., Oct. 21, 2011); *see also Watt*, 849 F.3d at 196-97 (5th Cir. 1988).

The parties dispute at length about the applicability of the Supreme Court case *Florence v. Board of Chosen Freeholders of County of Burlington* to the case at hand. In *Florence*, the Supreme Court held that unless "'substantial evidence' demonstrating their response to the situation is exaggerated" is shown, security imperatives involved in jail supervision "override the assertion that some detainees must be exempt from the more invasive search procedures" even absent reasonable suspicion of a concealed weapon or contraband. *Florence*, 132 S.Ct. at 1518. Consequently, Wood County argues that pursuant to *Florence*, Plaintiff did not did not provide "substantial evidence that being subjected to an unclothed search on one occasion, after being arrested for a Terroristic Threat and before being placed into a multi-person holding cell, constituted an 'exaggerated' response by Defendants." Wood Cnty. Defs.' MSJ at pg. 19 (Doc. No. 36).

Wood County's reliance on *Florence* is not persuasive. The Supreme Court recognized the narrow applicability of the *Florence* decision, not requiring the Court to rule on "the types of searches that would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees,"[10] or "whether an arrestee whose detention has not yet been reviewed by a magistrate or other judicial officer, and who can be held in available facilities removed from the general population, may be subjected to the types of searches at issue here." *Id*. at 1523-24. Plaintiff correctly argues that because she was not an arrestee who was committed to the general population of the jail, and had not been before a magistrate or other judicial officer, *Florence* does not apply in this case.

---

[10] In other words, "The Court holds that jail administrators may require all arrestees *who are committed to the general population of a jail* to undergo visual strip searches not involving physical contact by correction officers." *Florence*, at 1524 (Alito, S., concurring).

Based on *Watt* and the subsequent case law within the Fifth Circuit, the Court concludes that the law was clearly established that Plaintiff has a constitutional right to be free from a strip search absent an individualized reasonable suspicion that she was hiding weapons or contraband. The violation of Plaintiff's right, which is based on whether Threadgill had reasonable suspicion that Plaintiff possessed weapons or contraband, overlaps with the analysis of the second prong for qualified immunity - whether Threadgill's conduct was objectively unreasonable. The Court next addresses both issues.

### b. Plaintiff has not proven that Threadgill's conduct was objectively unreasonable.

If no clearly established constitutional right has been violated, the inquiry ends there. *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004). But if a constitutional violation has occurred, the court must next determine whether the conduct was objectively unreasonable. *Id.* Objective reasonableness must be evaluated as of the time of the conduct in question. *See Richards v. Wisconsin*, 520 U.S. 385, 395 (1997).

Plaintiff asserts that no reasonable suspicion existed for Threadgill to subject Plaintiff to the "squat and cough" strip search. Hayes had no previous criminal history, and was wearing an Easter Sunday dress at the time of her arrest. Pl.'s Resp. to Wood Cnty. Defs.' MSJ at ¶ 24 (Doc No. 40). Hayes further argues that upon completing the initial pat-down search, Threadgill "was satisfied and had no suspicion that Plaintiff was transporting contraband." *Id.* at ¶ 2 (citing to Ex. 5, Oral Dep of Sarah Threadgill 11:7 – 11:17) (Doc No. 40). Plaintiff additionally maintains that Threadgill's method in conducting the search and subsequent treatment of Plaintiff was "designed to demean, humiliate, and degrade" her. *Id.* at ¶ 31 (Doc. No. 40). According to Plaintiff, Threadgill made Plaintiff "squat and cough" at least three times, during which Defendant Threadgill "laughed or chuckled under her breath at Plaintiff's scars and chest." *Id.*

Wood County responds that Plaintiff failed to establish that the Jail's significant interest in conducting a thorough search as a standard part of the intake process is outweighed by Plaintiff's privacy interest. Wood Cnty. Defs.' Reply to Pl.'s Resp. at pg. 9 (Doc. No. 47). At the crux of the matter, Wood County argues that Threadgill's conduct was reasonable because she acted in accordance with the Jail's policies to conduct strip searches of certain categories of new arrestees. In Wood County, each arrestee undergoes a clothed search and/or unclothed search. Wood Cnty. Defs.' MSJ, Ex. A, Affidavit of David McGee, at pg. 3 (Doc. No. 36-1). According to David McGee, the Wood County Jail Administrator, "Wood County's policies and procedures related to inmate searches are set forth in the Jail's Operating Procedures and the Wood County Detention Center Search Form." *Id*. Mr. McGee further states that Wood County Jail requires an unclothed search for certain categories of arrestees, one category including individuals arrested for a violent crime. *Id*. Wood County Jail uses a Severity of Offense Scale, supplied by the Texas Commission on Jail Standards, which ranks Texas Penal Code offenses according to their severity. *Id*. at 4. Under Texas Penal Code Section 22.07 "[a] person commits an offense [of Terroristic Threat] if he threatens to commit any offense involving violence to any person." Defendants argue that because Plaintiff's charge of Terroristic Threat is identified as an assaultive charge on the Severity of Offense Scale, Plaintiff was subject to being strip searched for an arrest involving a violent crime pursuant to Wood County policies. *Id*. at 4. Moreover, even though Threadgill admits that she was satisfied and had no suspicion that Plaintiff was transporting contraband after the initial pat-down, Threadgill clarifies in her deposition "I didn't say that I didn't suspect she had any [contraband] inside her, I just said on her, like on her clothing or anything." Pl.'s Resp. to Wood Cnty Defs.' MSJ, Ex. 5 (Oral Dep. Sarah Threadgill, at 27:9 – 27:11) (Doc. No. 40-5).

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes as a matter of law that Threadgill had a reasonable suspicion to believe that Plaintiff was concealing weapons or contraband on the basis that Plaintiff was arrested for the offense of Terroristic Threat, which Wood County identifies as a violent offense. Plaintiff does not cite to any authority that even if Defendant Threadgill laughed or chuckled while conducting the strip search that her conduct amounted to a constitutional violation.[11]

However, even if Threadgill did not possess individualized reasonable suspicion to believe that Plaintiff was concealing weapons or contraband, Plaintiff has failed to proffer sufficient summary judgment evidence that Threadgill acted in an objectively unreasonable manner. Plaintiff does provide testimony from Sheriff Jason Bridges that the Nacogdoches County Jail does not implement a policy that would call for an arrestee of a misdemeanor terroristic threat to be strip searched. *Id*. at ¶ 28. But Plaintiff falls short of arguing or providing evidence that a lack of a policy for strip searching arrestees of violent crimes in another county amounts to objectively unreasonable conduct in following Wood County's policy. Objective reasonableness must be evaluated as of the time of the conduct in question. *See Richards v. Wisconsin*, 520 U.S. 385, 395 (1997). Hayes was arrested on an outstanding warrant for committing the offense of Terroristic Threat, a Class A Misdemeanor, which Wood County Jail considers to be a violent crime. Plaintiff was placed in a holding cell where she could have had contact with jail staff or other arrestees. Plaintiff was requested to "squat and cough" three times, during which Threadgill conducted a visual inspection for concealed weapons or contraband. Plaintiff counters this evidence with none of her own that no reasonable officer in Threadgill's

---

[11] Plaintiff also alleges that Defendant Threadgill did not give Plaintiff an option to cut the underwire from her bra, and also gave Plaintiff a shirt that was too small. *Id*. at ¶ 2. However, Plaintiff provides no argument or evidence that such conduct is a violation of Plaintiff's Fourth Amendment right.

position would have acted as she did. *See generally*, Pl.'s Resp. to Wood Cnty. Defs.' MSJ (Doc. No. 40-5).

Plaintiff has shown that she has a clearly established constitutional right to be free from visual strip searches, absent an individualized reasonable suspicion that she was concealing weapons or contraband. However, based on the record before the Court, Plaintiff falls short of raising a genuine issue of material fact that Threadgill acted without reasonable suspicion and that her conduct was objectively unreasonable, i.e., no officer in her position would have acted similarly. Therefore, because Threadgill acted reasonably and is also entitled to qualified immunity, the Court **GRANTS** Defendant Wood County's Motion for Summary Judgment on Plaintiff's Fourth Amendment claims against Sarah Threadgill.

### 3. Sheriff Jim Brown

Plaintiff Hayes next brings forth a claim against Sheriff Brown, in his official capacity as the relevant policy maker. Pl.'s Resp. to Wood Cnty. Defs.' MSJ ¶ 32 (Doc. No. 40). As discussed above in section III.A.3, official capacity suits are really suits against the governmental entity. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Monell v. Dept. of Soc. Serv.'s of City of New York*, 436 U.S. 658, 690 n.55 (1978) (internal quotations omitted).

Therefore, the Court **GRANTS** Wood County's Motion for Summary Judgment as to Hayes' § 1983 claims against Sheriff Brown.

### 4. Wood County

Because Threadgill is entitled to qualified immunity, and consequently Plaintiff has failed to allege a viable §1983 claim against Threadgill, Plaintiff's claims against Wood County for

implementing the visual strip search policies fail as a matter of law.[12] *See Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (requiring plaintiffs asserting *Monell*-liability claims to show "(1) an official policy (2) promulgated by the municipal policymaker (3) [that was also] the moving force behind the *violation of a constitutional right*") (emphasis added). *See also Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 (5th Cir. 2016) (affirming dismissal of plaintiff's *Monell* claims against the city for failing to show a violation of his constitutional rights).

Accordingly, the Court **GRANTS** Defendant Wood County's Motion for Summary Judgment on Plaintiff's Fourth Amendment claims against Wood County.

## IV.     CONCLUSION

Plaintiff has failed to raise a genuine dispute as to any material fact regarding her Fourth Amendment claim that Defendants Jimmerson and Brittain violated her constitutional right to be free from false arrest. The Court finds that probable cause to arrest Plaintiff existed as a matter of law. Nor does Plaintiff affirmatively identify an official policy or custom promulgated by Nacogdoches County as the moving force behind the alleged constitutional violation. Without an underlying § 1983 violation, Plaintiffs' claims of malicious prosecution against the Nacogdoches County also fail as a matter of law. Plaintiff's claims against Sheriffs Jason Bridges and Jim Brown, as brought against them in their official capacity, are subsumed within her claims brought against the respective counties.

Plaintiff also has failed to raise a genuine dispute of material fact that Defendant Threadgill acted in an objectively unreasonable manner in conducting a visual strip search of Plaintiff based on the nature of her arrest. As Plaintiff does not show a violation of her

---

[12] It is unclear whether Plaintiff alleges *Monell* violations against Wood County. In her "Arguments and Authorities" section, Plaintiff does not argue Wood County's liability as a separate and distinct claim. *See* Pl.'s Resp. to Defs.' MSJ (Doc. No. 40). Nor does Plaintiff argue that Wood County's search policy is unconstitutional.

constitutional right by Defendant Threadgill, Plaintiff consequently cannot maintain any claims against Wood County.

Finally, Plaintiff has not overcome Jimmerson, Brittain, and Threadgill's assertions of qualified immunity.

Accordingly, it is **ORDERED** that summary judgment be **GRANTED** in favor of Defendants Nacogdoches County, Jason Bridges, Gary Brittain, Brad Jimmerson, Wood County, Jim Brown, Mandy Cote, and Sarah Threadgill as to all claims asserted by Plaintiff (Docs. No. 35, 36). Additionally, it is **ORDERED** that Nacogdoches County's Motion to Sever be **DENEID AS MOOT** (Doc. No. 56).

**So ORDERED and SIGNED this 25th day of October, 2016.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE